56 CCPA

**Application of Herschel T. WHITE and Arthur W. LANGER, Jr.**

**Patent Appeal No. 8076.**

United States Court of Customs and Patent Appeals.

Jan. 16, 1969.

Whelan, Chasan, Litton, Marx & Wright (Harold Einhorn, of counsel), for appellants.

Joseph Schimmel, Washington, D. C., (S. Wm. Cochran, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, ALMOND and BALDWIN, Judges.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–6 in appellants' application [1] on the ground of double patenting [2] over the claims of appellants' patent,[3] despite the filing of a terminal disclaimer [4] as to the portion of the term of any patent issued on the ap-

---

1. Serial No. 413,347, filed November 23, 1964, for "Polymerized Ethylene Pour Point Depressants from Alkanol Modified Catalysts," allegedly a division of serial No. 55,845, filed September 14, 1960, for "Polymerized Ethylene Lubricating Oil from Alkanol Modified Catalysts," now U. S. Patent 3,168,588, issued February 2, 1965.

2. Inasmuch as the present application is an optional division (i. e., appellants initiated the filing of the divisional application which was not in response to a re-

quirement for restriction or election of species), 35 U.S.C. § 121 has no applicability. See In re Wright, 393 F.2d 1001, 55 CCPA 1106 (1968).

3. U. S. Patent 3,168,588, issued February 2, 1965.

4. The terminal disclaimer of record here disclaimed "all that portion of any patent to be issued on said application subsequent to February 2, 1982, a period of seventeen years subsequent to the issue of U. S. Patent 3,168,588."

pealed application beyond the expiration date of said issued patent. No claims have been allowed.

■ Appellants' patent and appealed application contain identical disclosures in the same sense as in In re Wright, 393 F.2d 1001, 55 CCPA 1106 (1968). Having been copending with the application at bar, appellants' own patent is *not* prior art although it *is* the basis of the double patenting rejection. In re Eckel, 393 F.2d 848, 55 CCPA 1068 (1968).

■ As discussed in *Eckel*, supra, there are three categories into which inventions may fall: Unobvious, Obvious and Same Invention. Although the "same invention" type "double patenting" is identifiable with a statutory provision, namely, 35 U.S.C. § 101, the "obviousness" type "double patenting" is a judicially created doctrine and is certainly not bottomed on section 103. In re Braithwaite, 379 F.2d 594, 54 CCPA 1589 (1967). Of course, if the appealed invention is unobvious, there can be no double patenting. On the other extreme, a terminal disclaimer is ineffective where it is attempted to twice claim the same invention. In re Knohl, 386 F.2d 476, 55 CCPA 715 (1967). However, an "obviousness" type "double patenting" rejection may be obviated by a terminal disclaimer. In re Wright, supra; In re Eckel, supra; In re Braithwaite, supra; In re Robeson, 331 F.2d 610, 51 CCPA 1271 (1964).

■ Speaking for the majority in *Eckel*, Judge ALMOND stated:

The decisions [*Robeson, Braithwaite*, and, presumably *Eckel* itself] have, therefore in no way enlarged the scope of patent protection available to the inventor. However, they do have the salutory effect of making public the inventor's disclosure at an earlier date than would have been possible under previous practice. While we have explored the possible detrimental effects of this practice, we have found the usual arguments on this point to be lacking in substance. In re Jentoft, 392 F.2d 633, 55 CCPA 1026.

We, therefore, feel that the use of terminal disclaimers in such cases results in a clear benefit to the public, but in no substantial offsetting detriment.

Although in *Eckel* the application contained additional disclosure not in the patent, the above-quoted statements are equally applicable to this case where the appealed application was copending with and contains a disclosure identical to the patent, as this court recognized in In re Wright, supra, decided after the present board decision. It is self-evident that the mere disclosure in an application which happens to mature into a patent, of an invention that may be dominated by claims to another invention, does not necessarily establish that the *inventions* are one and the same. And, as this court stated in *Eckel*, supra, "The sole issue of importance in these double patenting cases is whether the applicant is attempting to twice claim the same invention, or whether he is claiming different inventions." The analysis of whether one invention has been twice claimed requires a factual inquiry into whether the claims of the application are directed to the *same* subject matter, or invention, as the claims of the patent. If there be any *substantive* difference, and not *merely* a difference in language, then the inventions are not the same no matter how small or how obvious those differences may be.

■ Appellants urge that the appealed claims are unobvious and therefore patentable on their face, or, alternatively, that they are only obvious in view of their own patented invention but nevertheless patentable in view of the terminal disclaimer. In support of the board, the solicitor argues that there is but one invention involved. We believe that the invention defined by the appealed claims is not the same as that defined by the patent claims; and, in view of the terminal disclaimer, the question of obviousness here is moot.

Appellants' patent discloses and claims a "method of preparing hydrocarbon oils" by "polymerizing ethylene-contain-

ing gases to obtain oils having a molecular weight of about 80–2,000." Patent claim 1 is illustrative and reads:

1. In a method of preparing a hydrocarbon oil having a molecular weight in the range of 80 to 2000, said oil being suitable for lubricating purposes which comprises polymerizing an ethylene-containing gas in the presence of a catalyst consisting of a halide of a transition metal selected from the group consisting of titanium, zirconium, and vanadium and an aluminum alkyl compound having the formula $A_lR_nX_{3-n}$, n representing a number of at least 1 but less than 2 in the presence of a halogenated aromatic hydrocarbon diluent, at a pressure of 0–50 p.s.i.g., the improvement which comprises utilizing a minor amount of a $C_1$–$C_8$ alkanol as a catalyst modifier, said alkanol being present in an amount such that the ratio of alkanol to the alkyl of the aluminum alkyl after reduction of the transition metal halide is not greater than 0.5/1.

As disclosed in the patent specification:

The products of this invention are useful as motor lube base stocks, olefinic synthetic intermediates, hydraulic transmission fluids, pour depressants, synthetic jet engine oils and bright stocks, among others. These products can also be hydrogenated without any diminution in viscosity index.

Appellants additionally urge that "the oily polymerizate in its unfractionated form has an independent utility in its use as an intermediate in the preparation of lube oils, chemical raw materials, and pour point depressants."

Based upon Example 1, appellants now claim a method of preparing a semi-solid pour point depressant by separating from the aforementioned polymerizate an oil-soluble waxy solid having a boiling point of more than 405° C. Appealed claim 1, from which appealed claims 2–6 depend, is illustrative and reads:

1. A method for preparing a pour point depressant which comprises:

a. Polymerizing an ethylene-containing gas by contacting it with a catalyst comprising a halide of a transition metal selected from titanium, zirconium, or vanadium and an aluminum alkyl compound having the formula $A_lR_nX_{3-n}$, n representing a number of at least 1 but less than 2, and X representing a halogen; at a pressure of 0 to 50 p.s.i.g.; in the presence of a halogenated aromatic diluent and a $C_1$–$C_8$ alkanol such that the ratio of of alkanol to the alkyl of the aluminum alkyl after reduction of the metal halide is not greater than 0.5/1; and

b. separating from the polymerizate an oil-soluble waxy solid having a boiling point of more than 405° C.

As may be readily seen, appealed claim 1 is very similar in organization to patent claim 1 over which the former has been rejected. This case is quite similar to In re Eckel, supra, in that respect and in that the patent claims are broader since they merely recite the step of "polymerizing" without requiring any "separating." Also, the patent claims are for a "method of preparing a hydrocarbon oil," and the appealed claims are for a "method of preparing a pour point depressant" which is defined in appealed claim 1 as "an oil-soluble waxy solid." Thus, similar to *Eckel*, the patent claims dominate the invention of the appealed claims.

The patent claims cover a method of producing a polymeric oil which is useful, for example, for lubricating purposes. This oil inherently contains within it a waxy semisolid which acts as a pour point depressant. Thus, the total polymerizate, without separation, may be used as an easily poured lubricating medium.

In the present application, appellants' invention is a method for the production of a polymeric oil with the further step of separating out the oil-soluble waxy solid which is useful as a pour point de-

pressant. Thus, the isolated solid may be used with oils of a type not embraced by the claims of the issued patent.

The appealed claims distinguish from the patent claims in two ways: (1) in reciting in the preamble that it relates to the preparation of a pour point depressant instead of a hydrocarbon oil, and (2) by the additional step of "separating from the polymerizate an oil-soluble waxy solid having a boiling point of more than 405° C." These distinctions are sufficient, we believe, to delineate an invention which is at least different from the patented invention.

The decision of the board is reversed.

Reversed.

WORLEY, C. J., and ALMOND, J., concur in the result.