56 CCPA

### Application of Russell B. NEWTON.
### Patent Appeal No. 8167.

United States Court of Customs
and Patent Appeals.

Sept. 18, 1969.

Norman C. Armitage, attorney of record, Spartanburg, S. C., for appellant. Earle R. Marden, M. William Petry, Spartanburg, S. C., of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, HOLTZOFF and McLAUGHLIN, Judges, sitting by designation, and ALMOND and BALDWIN, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 6 and 7, the sole claims in appellant's application entitled "Pneumatic Cleaner." [1]

The invention relates particularly to vacuum clearing apparatus for clearing of lint and fiber from textile rolls such as those associated with spinning frames, roving frames, and the like. Looking at the top roll vacuum clearer 32, shown in cross-section in Fig. 2, reproduced below, it can be seen that it consists basically of an oval-shaped hollow shoe member 38 which engages the top front roll 22, a collar member 40 which communicates with an opening 42 in an elongated suction manifold 44, and tubular members 46 and 48 which provide communication between suction manifolds 34 and 44. The bearing surface of the shoe member 38 is curved to conform to roll 22, except for notch 54 in its forward lip which admits air and any foreign material carried by the roll. The rear lip 56 scrapes the latter from the roll, for entrainment in the admitted air and removal through the vacuum clearer 32. The specification states: "The outer dimension of the shoe member [38] is so selected that it will fit snugly into the collar member [40] to prevent leakage of air but at the same time can readily slide up and down to conform to variations in movement of the top front roll 22."

FIG.-2-

1. Serial No. 342,924 filed February 6, 1964.

Claims 6 and 7 read:

6. Textile drafting apparatus comprising a plurality of drafting rolls and including a pair of rolls in peripheral nip-forming engagement with each other, means supplying fiber to be drafted between said pair of rolls, suction conduit means in frictional engagement with one roll of said pair of rolls, said suction conduit means being a low friction resistant substantially rigid plastic-like material to prevent excessive wear on said one roll and said suction conduit means, means for connecting said conduit means to a source of negative pressure, and means providing fluid communication between said one roll and said suction conduit means to apply suction pressure to said one roll to remove lint scraped from said one roll by said suction conduit means.

7. The structure of Claim 6 wherein said pair of rolls are oriented to provide upper and lower rolls, said suction conduit means being in frictional engagement with said upper roll.

The examiner rejected appellant's claims on several grounds, summarized briefly here as (1) obviousness in view of prior art; (2) indefiniteness of claim recitation; (3) failure to comply with 35 U.S.C. § 112 and Patent Office Rule 71(b); and (4) unpatentability over the claims of the copending application serial No. 342,390 of R. M. Ingham, filed February 6, 1964, granted as U.S. Patent 3,251,101 on May 17, 1966.

As will be seen, the above rejections present us with a unique set of circumstances resulting in, insofar as we have been able to ascertain, a case of novel impression in this court. Prior to proceeding in detail, however, we point out that rejection (1) based on prior art was specifically reversed by the board and is not before us, therefore rendering discussion of the involved prior art unnecessary. The board did affirm rejection (4) based on the patent to Ingham, hence we discuss that patent here.

Of Ingham, appellant stated in his brief before the board:

* * * this disclosure is substantially identical to a copending disclosure of an application filed on the same day by a different inventor. For the Board's information both of these applications have been assigned to the same assignee, which assignments are not of record. The Applicant of the instant case is the inventor of the broad concept, as claimed. The inventor of the second application is the inventor of the *specific* embodiment disclosed but not claimed in this application. The only embodiment of the inventions presently worked out is that set forth in both applications. Applicant has only set forth in this case one embodiment of the invention to illustrate the utility of such invention. At the same time Applicant is only entitled to claim that portion of the invention which is his.

We reproduce claim 3 of Ingham as representative:

3. Textile drafting apparatus comprising a pair of drafting rolls in peripheral nip-forming engagement with each other, a suction manifold mounted in a predetermined position relative to said pair of drafting rolls and in communication with a source of negative pressure, suction conduit means in fluid communication with said suction manifold, means mounting said suction conduit means in frictional engagement with one roll of said pair of rolls and allowing movement of said suction means relative to both said suction manifold and said one roll of said pair of rolls upon encountering variations in the surface of said one roll of said pair of rolls, said suction conduit means having at least two spaced wall portions, one of said wall portions being of wear resistant plastic like material and being in frictional engagement with said one roll of said pair of rolls to scrape lint and debris therefrom and the other of said wall portions being spaced from said one

roll of said pair of rolls to provide an opening between said other wall portion and said one roll of said pair of rolls to allow a potential lap up to be directed to the suction source.

The examiner's rationale for the rejections summarized above was set forth at length in his Answer:

Claims 6 and 7 are further rejected as failing to comply with 35 USC 112 which states * * *. Further, Rule 71, which refers to 35 USC 112, paragraph (b) states * * *.[2] * * * since the specification and the drawings of copending Application Serial No. 342,920 and the instant application are identical, neither has clearly or specifically disclosed different inventions. While the above applications were filed on the same date, appellant states * * * that both have been assigned to the same assignee, although such assignments are not of record. Therefore the broad concept, which appellant declares his invention to be as recited in the claims, does not require the suction conduit means to be slidably mounted relative to a means connecting the conduit means to a source of negative pressure. As recited in the claims, the suction conduit means may comprise elements *40*, *38* as a single member connected to manifold *44* or the suction conduit means may comprise element *38* connected directly to manifold *44*. Neither of such broad concepts is disclosed nor precisely set forth in the specification as required by 35 U.S.C. § 112 or Rule 71(b).

The examiner then stated a new ground of rejection, namely:

Claims 6 and 7 are further rejected as unpatentable over the claims of copending application Serial No. 342,-920. Since the specification and the drawings are *identical* to the specification and drawings of said copending application and since there is only one species disclosed, it is quite obvious that there can be only one invention disclosed. Therefore, since the copending application is now in issue, and there has been disclosed only one invention, issuance of a second patent to the same invention would result in an improper extension of the common assignee's monopoly. Furthermore, it is a well settled fact that only a single invention is entitled to a single patent.

In making the above rejection, the examiner also noted that in certain cases the commonly assigned "improvement" patent of an inventor will not bar a patent on the basic invention of another inventor, stating however that in his opinion the present situation did not fall into that category for the reason, among others, that no cross-referencing was made. The examiner also directed attention to In re Sutherland, 347 F.2d 1009, 52 CCPA 1683, wherein a double patenting rejection in a related situation was reversed, distinguishing it however on the basis that the instant situation did not present independent and distinct inventions capable of use one without the other.

2. The portions of 35 U.S.C. § 112 and Rule 71 quoted by the examiner are reproduced here:

§ 112. Specification

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Rule 71. Detailed description and specification of the invention.

* * * * *

(b) The specification must set forth the precise invention for which a patent is solicited, in such manner as to distinguish it from other inventions and from what is old. It must describe completely a specific embodiment of the process, machine, manufacture, composition of matter or improvement invented, and must explain the mode of operation or principle whenever applicable. The best mode contemplated by the inventor of carrying out his invention must be set forth.

Finally the examiner recited:

Claims 6 and 7 are further rejected as indefinite in the recitation "means providing fluid communication between said one roll and said suction conduit means" inasmuch as the *space* or *opening* between the roll and the conduit is recited as a means.

The board made no mention of the last of the above discussed rejections, stating however that the rejection expressly based on 35 U.S.C. § 112 and on the claims of Ingham:

* * * appear to us to point toward the same issue, i. e. whether the Ingham, Jr., patent and the instant application set forth two different inventions capable of sustaining different patents. We will accordingly treat them together. Reference is made to the Examiner's Answer as to complete statement of his position.

It went on to say:

While it is true that the claims before us do not recite that the suction conduit means is allowed movement or is slidably mounted, as do the base claims 1, 3 and 5 of the patent, the only embodiment disclosed in the two cases is precisely the same, i. e., with said means (shoe 38) slidable. * * *

We do not even find a statement in the instant specification that shoe 38 was alternatively intended to be held stationary relative to the suction manifold and the related roll, much less means for so holding the shoe, assuming *arguendo* that the device would be operative with a stationary shoe. Nor is there a statement in the patent specification that the invention therein constituted an improvement over the present invention and what was in fact the improvement.

One practicing appellant's claimed invention would be entitled to use the only disclosed apparatus offered to him, i. e., with the shoe slidable, which is the apparatus disclosed and claimed in the patent. On these facts, a second patent cannot be granted, whether the same applicant or different applicants with a common assignee are involved.

The board concluded by sustaining the examiner.

Appellant's assignee then filed a terminal disclaimer and appellant requested reconsideration. The board adhered to its decision, responding on reconsideration that:

A terminal disclaimer cannot overcome the present rejection on the facts before us. See Commissioner's notice of January 9, 1967, at 834 O.G. 1615.

Appellant contends that the failure of the board to mention the rejection based on indefiniteness of claim recitation presumably means that such rejection was not upheld. The solicitor counters by arguing that the affirmance of the rejection on any of the grounds specified constitutes a general affirmance of the decision of the examiner on that claim, *except as to any ground specifically reversed* and citing cases in support of that view. Suffice it to say, we need not consider those contentions since we find persuasive appellant's argument set forth in his reply brief that the claim language "means providing fluid communication between said one roll and said suction conduit means" is not indefinite inasmuch as it can be logically construed to refer to the *walls* defining the notch or opening 54, as well as other equivalent means.

Turning to the rejection based on the claims of the Ingham patent, we find appellant contending that as a general rule in mechanical cases one specific embodiment can support broad as well as specific claims and therefore one embodiment can support more than one invention whether disclosed in one application or in two applications. The inventions here are different, it is urged, so that a terminal disclaimer is effective to overcome the rejection. Furthermore, appellant argues that a genuine case of diversity of inventorship exists here and that denial of the second patent would

serve only to penalize appellant for his diligence in ascertaining this.

The solicitor responds by arguing that the claims here define substantially the same invention defined in the claims of the Ingham patent except for a difference in scope. As a result under the decisional case law of this court, the terminal disclaimer cannot be effective to avoid the "double patenting" rejection based on the concept that identical inventions are being claimed. Apart from "double patenting," it is contended, the examiner's rejection can be considered under 35 U.S.C. § 102(g), such as to be immune from any avoidance by terminal disclaimer. The "doctrine of election" by a common assignee is urged to be applicable here.

Needless to say, both appellant's counsel and the solicitor have cited much case law in support of their respective positions, including decisions of this court concerned primarily with "double patenting" in related situations. We have studied the authorities referred to us, but we are unable to find a case on all fours. Although we have had cases involving identical disclosures, as well as cases involving different inventors and common assignees, we have not dealt with the situation where the sole specific embodiment disclosed in the two specifications was relied upon to support different patents by different inventors. That is not to say, however, that our recent plethora of cases dealing with double patenting does not now provide us with the rules to be applied in situations such as that before us.

Extensive citation of those cases is unnecessary.[3]

■ We consider first whether the claims of the application are directed to the same subject matter as those of the patent to determine whether an attempt is being made to twice claim the same subject matter. A comparison of the claims on appeal with the claims of the patent renders it manifest, we believe, that the compared claims differ more than merely in verbiage and minor scope and resort to camparison of disclosures is unnecessary. As recognized by the board, the claims of the patent are directed to a suction conduit means that is allowed movement or is slidably mounted, whereas the appealed claims contain no such limitations. We do not see the identical inventions argued by the solicitor. Having established that the claims do in fact define different inventions, it is clear that the terminal disclaimer by the common assignee overcomes the double patenting rejection. In re Bowers, 359 F.2d 886, 53 CCPA 1590; In re Borg, 392 F.2d 642, 55 CCPA 1021; In re Frilette, 412 F.2d 269, 56 CCPA.

■ We find the solicitor's reliance on 35 U.S.C. § 102(g) and his "doctrine of election" inapplicable here where different inventive entities are pursuing claims to *different* inventions. See In re Frilette, supra. We are not unmindful that the board believed that a terminal disclaimer would have no effect here and of its reference to the Commissioner's notice in 834 O.G. 1615[4] dealing

3. Several of the more recent cases are cited in In re White, 405 F.2d 904, 56 CCPA 870.

4. We reproduce a pertinent portion of that notice here:

In situations involving cases filed by different inventive entities, regardless of ownership, Sections 102 and 103 of 35 U.S.C. preclude the granting of two or more patents when directed to identical inventive concepts or when one of the concepts would be obvious in view of the other. A terminal disclaimer can have no effect in this sit-

uation since the bais for refusing more than one patent is not connected with any extension of monopoly.

In view of 35 U.S.C. 135, it is necessary to determine priority of invention whenever two different inventive entities are claiming a single inventive concept, and this determination should ordinarily be made before any patent is issued. This is true regardless of ownership, and the provision of Rule 201 (c) that interferences will not be declared or continued between commonly owned cases unless good cause is shown therefor does not mean that two

with double patenting. We note only that this procedural memorandum sets forth guidelines for the Patent Office which were not even followed in this case and hence can have no bearing on its outcome here.[5]

We turn then to consideration of the other ground of rejection on appeal here, the alleged failure to comply with 35 U.S.C. § 112 and Rule 71(b). While the board's election to expeditiously treat this ground of rejection together with that based on unpatentability over the claims of the Ingham patent may tend to confusion, the board made reference to the examiner's Answer where, fortunately, a complete statement of the Patent Office's position appears, as quoted hereinbefore. As can be seen, the examiner's position is based not so much on 35 U.S.C. § 112 alone but rather on his interpretation of that statutory provision as supplemented by Patent Office Rule 71(b).[6] The rejection so made is the one we treat.

Appellant argues that he has complied with 35 U.S.C. § 112 in that he has "set forth the best mode contemplated by the inventor of carrying out his invention" since the more specific apparatus of Ingham happens also to be the best mode contemplated by appellant for carrying out the broad invention. Granted that such is the case, the question of whether an inventor has or has not disclosed what he feels is his best mode is a question separate and distinct from that of the sufficiency of his disclosure to satisfy the requirements of the first portion of the first paragraph of 35 U.S.C. § 112 reciting that "the

specification shall contain a written description of the invention * * *." In re Gay, 309 F.2d 769, 50 CCPA 725. However, appellant further directs our attention to the general rule that an applicant in a mechanical case is allowed claims, when the art permits, which cover more than the specific embodiment shown. We are in agreement with that general rule and share the view that here the claims are supported by the disclosure in the sense that the broad claims read on the specific embodiment described.

The crux of the matter here, as recognized by the examiner in his express reference to and quotation of Rule 71(b) requiring that the specification set forth the precise invention for which a patent is solicited in such manner to distinguish from other inventions, is, however, that the Patent Office feels that one wishing to practice appellant's claimed invention is taught only the specific embodiment disclosed, which embodiment is that disclosed and claimed in the Ingham patent. In effect then, one is not told how to carry out appellant's broad invention to the exclusion of another's more specific embodiment thereof. That appellant has invented solely the broad concept becomes clear only upon consideration of the Ingham patent. Yet this distinction is not brought out. It was not without significance that this court noted in In re Sutherland, supra:

It occurs to us that much of the difficulty in this case in its progress through the Patent Office might have been avoided if the solicitors had taken

patents are to be allowed in such cases, but that the common assignee should be called on to state which of the entities involved is prior to the other in date of invention. (p. 1616)

5. We are reminded of our observation in In re Stanley, 214 F.2d 151, 41 CCPA 956, set forth in the syllabus:
* * * if there is no patentable distinction between generic claims and improvement claims, examiner should have rejected improvement claims and

patent should not have issued; applicants should not be denied a patent because of error made by Patent Office, if such an error were in fact made.

6. It is well settled that the Rules of Practice in the Patent Office, when not inconsistent with the statutes from which they are derived, have the force and effect of law. In re Kaghan, 387 F.2d 398, 55 CCPA 844; In re Hession, Jr., 296 F.2d 930, 49 CCPA 809; Land v. Dreyer, 155 F.2d 383, 33 CCPA 1108.

more pains to points out in the two specifications, as well as in the claims, who invented what—if Carpenter had expressly stated what parts of his disclosure constituted the invention of Sutherland and if Sutherland's specification had pointed out that in part he was disclosing contemporaneous inventions of Carpenter. Neither application seems to make any reference to the other, yet, as we have indicated, the two applications contain descriptions of the same flow-sheet as embodying the invention of both applicants. Each uses the other's invention as part of his "best mode" of carrying out his invention. At the same time, the Patent Office could have improved matters by enforcing its Rule 71(b) requiring that "The *specification* must set forth the precise invention for which a patent is solicited, *in such manner as to distinguish it from other inventions* and from what is old." [Emphasis court's.] Both of these applications were in the hands of the same examiners.

As the quotation reveals, that statement has particular relevance to the situation here. As the case is before us, no attempt has been made to point out in the specification who invented what—nor is any reference to Ingham present.[7] On these facts, we do not necessarily disagree with the examiner that the requirement of Rule 71(b) has not been met.

We recognize, however, that noncompliance with Rules of Practice dealing with matters of form as contrasted with questions of patentability traditionally results in objection to the specification with review by petition to the Commissioner rather than rejection of the claims and enforcement of the law through appeals to the board and this court. Since Rule 71(b) as applied here goes only to a matter of form in the written description, noncompliance therewith is not a proper ground for rejection of the claims.

Accordingly, the decision of the board is reversed.

Reversed.

Judge HOLTZOFF participated in the hearing of this case but died before a decision was reached.

7. A problem here is that the claims, which admittedly are part of the specification, contribute little to description of the *structure* which Newton invented but instead merely broadly define the legal scope of protection by omitting specific reference as to whether the suction conduit is movably mounted.